*Appeal dismissed.*

All concurred.

Personnel Appeals Board
No. 90-169

## APPEAL OF ELAINE FUGERE
### (New Hampshire Personnel Appeals Board)

June 7, 1991

*Backus, Meyer & Solomon,* of Manchester (*Jon Meyer* on the brief and orally), for the appellant.

*John P. Arnold,* attorney general (*Julie W. Howard,* assistant attorney general, on the brief and orally), for the State.

JOHNSON, J. This case involves the termination of appellant Elaine Fugere's employment with New Hampshire Technical Institute (NHTI). Fugere appeals the decision of the personnel appeals board (the board) upholding the termination, claiming that NHTI fired her in violation of the rules and agreement governing her employment with NHTI and in retaliation for her previous, successful appeal to the board. We agree that NHTI violated several procedural

rules in firing Fugere; moreover, we find certain of the board's rulings to be clearly unreasonable. Therefore, we reverse and remand to the board for Fugere's reinstatement.

Because our holding obviates the need to decide Fugere's claim of retaliatory treatment, we recite the facts and procedural history only as they pertain to the issues of rules violations and the board's unreasonable rulings. Fugere began teaching in NHTI's dental assisting program in 1981. At that time, NHTI had two separate dental programs, dental assisting and dental hygiene. Although the two merged into one "dental auxiliaries" program in 1986, the merger appears to have caused no functional changes in the dental programs relevant to this appeal. The professors of one program occasionally teach classes in the other, but there are two distinct groups of dental students. Because a hygiene student's course of study is twice as long as that of an assisting student, a hygienist is considered to be more skilled than an assistant, and is capable of performing dental work, such as teeth cleaning, for which an assistant is not qualified.

Fugere was assigned to teach a non-clinical dental hygiene course during the 1981–82 academic year; after that, Fugere was assigned to teach dental assisting classes exclusively. She received several promotions, and was elevated to the position of associate professor in 1985. However, for reasons not important here, NHTI terminated her employment in 1988. Fugere successfully appealed the termination, and NHTI was notified on May 23, 1989, of her reinstatement with back pay.

Fugere was sent her teaching schedule for the 1989 summer term two days later, on May 25, 1989. The schedule consisted of approximately two days of dental assisting clinics and two days of dental hygiene clinics. She testified that she objected to this schedule, because she believed she was not competent to teach dental hygiene, particularly in a clinical setting. NHTI, however, declined to change her assignments. On Tuesday, June 6, 1989, at her first scheduled dental hygiene clinic, Fugere refused to supervise patient care. She met with her dean, Arthur Harris, and requested a leave of absence. Her request was denied.

On June 8, 1989, Fugere telephoned NHTI to report that she was ill and would not be at work that day. Harris then wrote her the following letter, dated June 8, 1989:

> "I was disturbed to learn that you called the Institute this morning to inform us that you would be absent from your responsibilities because of illness. Later this morning, we

received at the Institute, a letter from your attorney indicating that he had advised you not to accept the teaching responsibilities in the Dental Hygiene Clini[c]. As a result of these two events, I can only wonder about the validity of the illness. Therefore, pursuant to the current Collective Bargaining Agreement . . . I am requiring you to furnish the Institute with a certificate from an attending physician stating that in the practitioner's professional judgment, the sick leave was necessary. This certificate from your physician must be submitted no later than 4:00 p.m. on Friday, June 16, 1989."

The relevant portion of section 11.4 of the collective bargaining agreement states:

"An employee may be required by the Employer to furnish the Employer with a certificate from the attending physician or other licensed health care practitioner when, for reasonable cause, the Employer believes that the employee's use of sick leave does not conform to the reasons and requirements for sick leave use set forth in this Agreement. Such certificate shall contain a statement that in the practitioner's professional judgment sick leave is necessary."

On the following day, Friday, June 9, 1989, Fugere was taken by a cousin (who is a mental health counselor) and a police officer to the Emergency Services Division of the Mental Health Center of Greater Manchester. There Cher Mason, a nurse and emergency technician, verified that Fugere was in a "true psychiatric emergency," and advised her to have no contact with NHTI. Nevertheless, Fugere ensured that NHTI was notified of her illness, and that day both she and her attorney asked Mason for the medical certificate NHTI required of her. There is no dispute between the parties that Fugere was in fact seriously ill.

When Mason did not immediately provide a medical certificate, Fugere's attorney made several follow-up calls to the mental health center until Mason finally sent the certificate to him on June 20, 1989. It states that Fugere was suffering from "severe emotional distress and exhaustion" and recommends that "she be excused from working for an undetermined period of time." Because Mason mailed the certificate to Fugere's attorney on June 20, 1989, it did not reach the State's attorney until June 29, 1989. Mason indicated at the hearing before the board that the delay in submitting the certificate was due to her heavy workload and backlog of paperwork.

Meanwhile, on June 14, 1989, NHTI President David Larrabee sent Fugere the following letter:

> "For the last four (4) work days, Thursday and Friday, June 8 and 9, and Monday and Tuesday, June 12 and 13, you have notified us by telephone that you are sick and unable to report to work. Your sick leave, under State Regulations, started accruing on March 8, 1989 (Reinstatement Date) and thus you have accrued 3.75 days of sick leave. This leave was exhausted on Tuesday, June 13, 1989. . . . [W]e cannot grant a leave of absence without pay beyond Friday, June 16, 1989. Unless you have returned to work on or before Monday, June 19, 1989, at 8:00 am, . . . you will be terminated. . . ."

(Emphasis added.) We must point out here that, in writing this letter, Larrabee failed to take into account the eleven days of sick leave Fugere had accumulated for the months during which she was wrongly discharged. NHTI does not dispute this on appeal.

Fugere did not return to work on Monday, June 19, 1989 (or at anytime later), and on Thursday, June 22, 1989, Larrabee sent her another letter, the first of the three "warning letters":

> "Pursuant to the Rules and Regulations of the Division of Personnel, PER 308:03(c)(3)(b), this is a written warning for absenteeism without approved leave. You have been absent without prior approved leave since Monday, June [1]9, 1989. Unless immediate corrective action on your part is taken, you shall be subject to additional disciplinary action which will result in your termination from employment."

We note that the letter actually reads "absent without prior approved leave since Monday, June 9, 1989 (emphasis added)." However, June 9, 1989, was a Friday. Because the Monday immediately preceding the date of the letter was June 19, 1989, and because Larrabee's June 14, 1989 letter stated that Fugere must return to work by Monday, June 19, 1989, we assume that the intended date in the above letter was Monday, June 19, 1989.

Larrabee sent Fugere a second, similar warning letter the next day, Friday, June 23, 1989. It stated: "You were absent without prior approved leave on Thursday, June 22, 1989. If this offense (absenteeism without approved leave) is violated a third time, as [per] PER 308:03(c)(4)(e), you will be discharged upon receipt of a third and final written notice of this offense." The following Monday, June 26,

1989 (the same day Fugere's attorney mailed the medical certificate to the State's attorney), Larrabee sent her a notice of termination: "You were absent without prior approved leave on Friday, June 23, 1989. Effective immediately, as [per] PER 308:03(c)(4)(e), you are hereby notified of your termination, as this is the third warning for absenteeism without approved leave."

Fugere appealed this termination to the personnel appeals board, but the board upheld NHTI's actions. In its order, the board questioned whether Fugere would have been able to return to work within the confines of the sick leave actually available to her, and stated: "Whether or not Appellant had accrued sick leave available to her at that time is irrelevant to the question of the legitimacy of her absence." The board then examined the issue of Fugere's medical certificate, and ruled that it was untimely submitted. Even if it had been timely submitted, the board stated, it was inadequate because (1) it was not written by a doctor; (2) it does not state that Fugere is unable to return to work as of the date of the certificate or that "extended leave is necessary"; and (3) there was no evidence that Fugere "even attempted to provide timely certification that her initial or continued absence was due to illness." Accordingly, the board ruled that NHTI acted reasonably in "treating her as absent without approved leave" when Fugere failed "to offer some justification for her absence."

Fugere filed a motion to reconsider, arguing that the certificate was adequate and timely, and that NHTI's warning letters failed to specify the actual corrective action required of her. The board responded by finding that neither Fugere or Mason, nor Fugere's attorney, ever attempted to notify NHTI that Fugere was unavailable for work because of illness. Moreover, the board noted that Fugere's certificate was not received by NHTI's representative until after she was fired. The board then stated:

> "The Board's decision to uphold the termination of Elaine Fugere did not turn upon the adequacy of Cher Mason's assessment of Appellant's emotional state. Nor did it turn solely upon Ms. Mason's statement that 'it is recommended that she be excused for an undetermined period of time'. The Board's decision rested upon Appellant's failure to provide adequate and timely certification, in compliance with Per 307.04(k) and CBA [Collective Bargaining Agreement] Article 11.4, that her request for sick leave was legitimate and that she should not be discharged for absenteeism without approved leave."

The board concluded by ruling that "[t]he obvious corrective action [requested of Fugere in NHTI's letters] would be to return to work, or to secure approved leave." Fugere appealed these rulings and findings directly to this court.

On appeal, Fugere alleges several errors in the board's orders. She repeats her arguments made before the board, and argues in addition that NHTI's warning letters did not constitute legally sufficient warnings because (1) they did not provide for her signature, as required by the personnel rules; and (2) they were sent in too rapid succession. Moreover, Fugere maintains that the board's orders in effect approved a requirement that an employee must receive prior approval before utilizing sick leave.

The State responds that NHTI's warning letters were, in fact, legally sufficient and that, as a consequence, NHTI acted reasonably in terminating Fugere's employment. In addition, the State avers that Fugere's medical certificate was untimely. Finally, the State argues that the board did not base its decision on a requirement of prior approval for use of sick leave. Given our decision that NHTI's warning letters were legally insufficient and that the board erred in ruling the medical certificate untimely and inadequate, we need not address the parties' arguments concerning the requirement of prior approval.

Before addressing the two basic issues before us, we note the applicable review standard. RSA 541:13 states:

"Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the [board] to show that the same is clearly unreasonable or unlawful, and all findings of the [board] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

*See also* RSA 21-I:58, II.

I. *Legal Sufficiency of Warning Letters*

■ We hold that the board erred in approving NHTI's termination of Fugere's employment, because NHTI's warning letters were legally insufficient. The insufficiency stems from three violations of the personnel rules and the parties' collective bargaining agreement

(the agreement). As we have previously stated, "[a]n agency must follow its own regulations and a discharge procured in the face of a substantial violation of those regulations is invalid." *Colburn v. Personnel Commission*, 118 N.H. 60, 63, 382 A.2d 907, 909 (1978) (citation omitted).

■■ The first violation is NHTI's failure to specify explicitly in its warning letters the corrective action required of Fugere to prevent termination. The personnel rules state that an offense such as absenteeism without approved leave must be handled as follows:

> "a. One or more oral warnings may be given to the employee by the appointing authority. At the appointing authority's discretion, any number of oral warnings may be given depending upon the attitude of the employee and the appointing authority's judgment of the seriousness of the offense. It is the appointing authority's responsibility to point out the specific nature of the offense and discuss in detail with the employee the correct action to be followed in the future.

> b. If the appointing authority feels oral warnings have been, are, or would be ineffective or insufficient in view of the attitude of the employee, and/or the nature of the offense, a written warning shall be prepared. Warnings must indicate that unless corrective action is taken the employee will be subject to discharge."

N.H. ADMIN. RULES, Per 308.03(4). The State argues that the requirement to "discuss in detail with the employee the correct action to be followed" applies only to oral warnings. This argument is unpersuasive. It is true that the form of the rule suggests that paragraph a. applies to oral warnings and paragraph b. to written warnings. However, the personnel rules indicate that written warnings are considered more serious than oral ones. Consequently, an employee receiving a written warning must be protected by at *least* the same procedural safeguards, such as the right to be informed of the required corrective action, as an employee receiving an oral warning. Therefore, we understand the personnel rules to require an employer to explain to an employee in detail, whenever a written warning is made, the corrective action to be followed to avoid further discipline.

The State claims that, regardless of the rules, the corrective action required of Fugere by the warning letters was obvious: return to

work or submit a medical certificate. We disagree. If submitting a medical certificate was one of only two courses of corrective action which would have prevented the termination of Fugere's employment, this option should have been explicitly stated in the warning letters. The personnel rules demand no less. *See Hunt v. Personnel Comm'n,* 115 N.H. 713, 716, 349 A.2d 605, 607–08 (1975).

Moreover, it is apparent from the several letters quoted from above that it would have been far from obvious to a person in Fugere's position that submitting a medical certificate would constitute corrective action sufficient to prevent termination. Thus, Fugere was prejudiced by NHTI's error. Only one NHTI letter requested a medical certificate of Fugere. This was written on June 8, 1989, by Harris, Fugere's dean, and gave Fugere until Friday, June 16, 1989, to submit the certificate. The letter did not state that submission was required to prevent termination. The next letter Fugere received from NHTI was written on June 14, 1989, by *Larrabee,* the institute's president, two days before the deadline imposed by Harris for submission of the certificate. Larrabee's letter made no mention of the certificate, but instead stated that Fugere had run out of sick leave and would not be given leave past Friday, June 16, 1989. It stated that Fugere's employment would be terminated if she did not return to work by Monday, June 19, 1989.

The three warning letters dated June 22, 23, and 26, 1989, were also written by Larrabee and appear to follow-up his letter of June 14, 1989. The first one notes that Fugere had been absent without prior approved leave since Monday, June 19, 1989, the same date Larrabee gave as a deadline for return in his letter to Fugere of June 14, 1989. None of the warning letters mentions a medical certificate. We are persuaded that a reasonable person in Fugere's position could have assumed that he or she was being disciplined, and eventually fired, because of NHTI's erroneous belief that the employee had run out of available sick leave. It appears likely that NHTI abandoned the requirement of a medical certificate when it concluded that Fugere's sick leave had expired. We cannot make the assumption that Fugere was aware that submission of a medical certificate would have constituted corrective action sufficient to prevent termination, and thus we hold that Fugere was prejudiced by NHTI's failure to specify this option. *See Colburn v. Personnel Commission,* 118 N.H. at 64, 382 A.2d at 909.

■ The procedural error described above is egregious enough to warrant reinstatement. Nevertheless, we take the time to detail two

other errors made by NHTI in hopes of preventing similar mistakes in the future. First, NHTI violated New Hampshire Administrative Rule, Per 308.03(c)(4)(c), which states: "Written warnings shall be . . . signed by both the appointing authority and the employee. If the employee refuses to sign, the appointing authority shall so state." There is no evidence that NHTI complied with this rule or made any attempts to do so. An employer in NHTI's position should provide an employee with a second copy of the warning letter which includes a signature line for the employee to sign and instructions to return that copy to the employer.

In its brief, the State makes no effort to defend NHTI's violation of the rule, but instead insists that we cannot address the issue on appeal because Fugere did not specifically raise it below. Fugere replies in her brief that "[s]he does not assert that the absence of a signature line by itself is an independent ground for reversal. Rather, she raises this failure as further evidence of the State's failure to comply with the letter and the spirit of PER 308.03(c)(4)." We agree with the State that Fugere did not specifically raise this issue below; therefore, we do not base our decision today on our finding that NHTI did in fact violate the rule, but again simply note it in the hope of preventing similar mistakes in the future.

Second, we hold that the timing of NHTI's warning letters constituted a violation of the personnel rules. As noted above, the letters were dated June 22 (Thursday), 23 (Friday), and 26 (Monday), 1989. We have no evidence before us as to the dates these letters were received by Fugere, but it seems likely that she did not receive the first letter before the second one was sent, or possibly even the third. Similarly, we cannot assume that she received the second letter before the third was sent.

The function of a warning is to give an employee notice that he or she has committed an offense, and to inform the employee of the proper future course of conduct. See N.H. ADMIN. RULES, Per 308.03(c)(4). Thus, particularly in the instance of a continuing offense, such as absence without approved leave, a warning gives the employee the chance to cease the offense and avoid termination. If the personnel rules were not intended to give an employee this chance, there would be no reason to require the employer to specify corrective action, and no reason to give two warning letters prior to actual termination.

We recognize that the personnel rules do not provide a rigid timetable to aid an employer in determining how soon after one

warning letter another may be sent. However, an employer such as NHTI cannot pretend to comply with the letter or spirit of the personnel rules by sending warning letters in such close succession that one is not received before the next is sent. NHTI's actions appear to be little more than a charade, designed to fire Fugere as quickly as it dared. We hold that warning letters must be sent in such a way as to provide reasonable time for the employee to respond. NHTI failed to do this in this case.

## II. *Adequacy and Timeliness of Medical Certificate*

The State argues that, regardless of NHTI's procedural violations, the board properly approved NHTI's termination of Fugere's employment for absence without approved leave because Fugere's medical certificate was untimely submitted. We disagree and hold that the board's finding of untimeliness is clearly unreasonable. *See* RSA 541:13.

Both the board and the State emphasize that Fugere's medical certificate was not received by the State's attorney until after she was fired. This fact is simply irrelevant. The issue here is whether NHTI properly terminated Fugere's employment. One cannot judge the timeliness of the medical certificate, for purposes of determining the appropriateness of the termination, solely according to whether it arrived before or after the termination. There must be a standard separate and apart from the date of termination by which to judge the certificate's timeliness. Again, the personnel rules provide no guidance.

One possible date is the deadline of June 16, 1989, set by Harris in his letter to Fugere of June 8, 1989. However, Harris did not state in this letter that Fugere's employment would be subject to termination if she failed to meet this deadline. Because the personnel rules require explicit warnings prior to termination for absence without approved leave, this deadline cannot be the standard used to judge the certificate's timeliness. *See* N.H. ADMIN. RULES, Per 308.03(c)(4).

■ As noted above, the State argues, and the board ruled, that the appropriate corrective action required of Fugere by NHTI's warning letters was: (1) return to work; or (2) submit a medical certificate or otherwise obtain approved leave. If submission of a medical certificate would have constituted proper corrective action, as the State contends, then prompt submission following receipt of either of the first two warning letters should have prevented termination. Thus, it appears that the appropriate standard by which to judge the

timeliness of Fugere's medical certificate is the promptness with which she submitted the certificate following receipt of the first two letters. However, as noted above, NHTI violated the personnel rules by sending the warning letters too quickly and by failing to tell Fugere that submission of a certificate would constitute corrective action. Given the nature of these violations, it would be unfair to hold Fugere to the standard articulated above. It is useless to speculate when the certificate would have been submitted, had NHTI not violated the rules. The violations go to the very heart of the warning requirements and are so egregious that, for purposes of this timeliness standard, we hold that Fugere never received true warnings as contemplated by the personnel rules. Thus, we refuse to find that Fugere submitted the certificate too late; rather, we find that NHTI fired her too early.

We noted above that the board found the medical certificate to be not only untimely, but also inadequate. Although on appeal the State does not question the certificate's adequacy, we will address this issue, again, in order to provide some guidance to the board and to the various State employers. In its original order, the board found the certificate inadequate for three reasons: (1) it was not written by a physician; (2) it does not state that Fugere is unable to return to work as of the date of the certificate or that "extended leave is necessary"; and (3) there is no evidence that Fugere "even attempted to provide timely certification that her initial or continued absence was due to illness." In its response to Fugere's motion for reconsideration, the board apparently moves away from reliance on the certificate's supposed inadequacy, and instead focuses on the timeliness issue. However, since the board did not recant its earlier statements concerning the reasons for the certificate's inadequacy, we will address them seriatim.

■■ First, the certificate was not inadequate because written by a nurse, and not a physician. While the personnel rules require a medical certificate to be written by a physician, N.H. ADMIN. RULES, Per 307.04(k), the agreement between the parties allows a "licensed health care practitioner" to write it, *Collective Bargaining Agreement* § 11.4 (SEIU Local 1984). The State concedes that the agreement controls over the personnel rules. *See State Employees' Ass'n v. N.H. PELRB*, 118 N.H. 885, 889, 397 A.2d 1035, 1038 (1978). As Fugere's medical certificate was written by a registered nurse, we hold that the board's ruling is clearly unreasonable. *See* RSA 541:13.

■ Second, the board erred in ruling that the certificate does not state that Fugere is unable to return to work as of the date of the certification or that "extended leave is necessary." Section 11.4 of the agreement simply states that "[s]uch certificate shall contain a statement that in the practitioner's professional judgment sick leave is necessary." The section contains no express requirement that these precise words, "sick leave is necessary," be used in the certificate, and we see no reason to imply such a requirement. We cannot assume that health care practitioners have access to an employee's collective bargaining agreement, and thus a certificate's adequacy cannot be judged according to whether the words "sick leave is necessary" are used. Fugere's certificate states: "The evaluation and assessment revealed that Ms. Fugere is suffering from severe emotional distress and exhaustion. Due to the nature of her current mental status and level of psychosocial stressors it is recommended that she be excused from working for an undetermined period of time." These statements adequately convey the message "sick leave is necessary." We therefore overrule the board's finding on this point as clearly unreasonable. *See* RSA 541:13.

Given the number of the board's errors and the seriousness of NHTI's procedural violations, we remand to the board for an order of reinstatement with back pay.

*Reversed and remanded.*

All concurred.