Personnel Appeals Board
No. 90-151

APPEAL OF BARBARA NOLAN & *a.*
(New Hampshire Personnel Appeals Board)

November 6, 1991

724

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief), by brief for the State.

*Michael C. Reynolds*, of Concord, general counsel, State Employees' Association of New Hampshire, Inc., by brief for the appellants.

BATCHELDER, J.  Barbara Nolan and other licensed practical nurses ("Nurses") at Laconia Developmental Services ("LDS") (for-

merly called the Laconia State School & Training Center) appeal an order of the personnel appeals board ("PAB"). That order dismissed as untimely the Nurses' appeal of a decision of the New Hampshire Division (formerly Department) of Personnel ("Personnel") which denied the Nurses retroactive pay in accordance with a reclassification of their position claimed by the Nurses to have been granted by the agency. For the reasons set out below, we reverse the rulings of the PAB and Personnel, and we remand.

I. *Background*

Personnel is responsible for classifying the positions of State employees into standardized labor grades. RSA 21-I:42, II. An employee, or group of employees, may request an upgrading in classification. RSA 21-I:57; N.H. ADMIN. RULES, Per 306.04. According to the statute in effect when the events in this case took place, an employee whose job is reclassified is entitled to retroactive pay from a point certain after the date of the request up to the date it is granted. RSA 21-I:54, III (1988).

The chronology of events in this case is simple, and is not in dispute. In September 1985, the Nurses requested a two-point labor class upgrading. After being turned down by their supervisor, the superintendent of the LDS, they brought their request to Personnel. Over a year later, they received a letter dated December 8, 1986, from Personnel containing a "recommendation" of a one-point upgrading. The letter asked that the Nurses

"*let this Division [know] in writing as to whether or not you accept our recommendation.* If you do, we will contact the Superintendent of [LDS] to determine two things. First, we would ask that he let [Personnel] know in writing as to whether or not he would accept our recommendation to upgrade . . . and secondly, where the funding would be obtained to accomplish this change. Other agencies having [nursing] positions will then be notified of our recommendation."

(Emphasis added.) This letter is central to the case at hand because it requires affirmative steps to *accept* the upgrading; Personnel's regulations, on the other hand, assume acceptance and require affirmative steps only if the Nurses intend to *reject* the upgrading. N.H. ADMIN. RULES, Per 306.04(c)(5)a. Hence, Personnel's reliance on the failure of the Nurses to affirmatively accept the increase as a basis for denial is misplaced.

Shortly thereafter, on December 23, 1986, the Nurses appealed the one-point recommendation to the PAB because they had hoped for a

two-point upgrading. Before the PAB took any action, however, the group rethought its position and, by a one-sentence letter dated March 12, 1987, stated that it "wishe[d] to withdraw its appeal." In mid-1987, all nurse positions, including the Nurses' LPN position, were upgraded by two labor grade points. In September 1987, the Nurses, having received no response to the withdrawal of their appeal, wrote to Personnel stating that they were "accepting" the one-point reclassification which had been "recommended" to them in December 1986. Such notice is neither required nor contemplated by Personnel rules.

In answer to this, Personnel wrote a letter in October 1987 to the Nurses, disapproving a retroactive upgrading and clearly demonstrating a misunderstanding of the legal and negotiating position of the parties at that time.

In response, in December 1987, the Nurses provided Personnel a history of events up to that point and asked for a reconsideration, which was not denied until July 1988. The following month, August 1988, the Nurses requested a hearing before the PAB, to provide a forum for an objective discussion of the history of their request and to shed light on the circumstances leading to the impasse. In March 1989, seven months later, the PAB held a hearing, but it waited until February 1990, one year later, to rule against the Nurses. One week later, on February 7, 1990, the Nurses filed a request for reconsideration with the PAB, which was denied in March 1990.

The Nurses then appealed to this court pursuant to RSA 21-I:58, II and RSA 541:6. They seek only reversal of the PAB's ruling, and an order that they be paid retroactively from September 24, 1985, the time of the reclassification request, through July 3, 1987, when classification was upgraded for all nurses. The Nurses, it must be noted, seek only expenditure of funds that had already been set aside to pay for the upgrading.

The appeal, submitted on the briefs, ostensibly presents a narrow question which, by its nature, is fact-specific. The question, as articulated by the State in its brief, simply stated is: "Whether the Personnel Appeals Board erred in dismissing [an] appeal as untimely?" The appeal to which reference must be had, apparently, in the eyes of the PAB, arises from the Nurses' August 2, 1988 letter seeking clarification of the position taken by Personnel in its letter of October 5, 1987, to the claimants, explaining why a retroactive pay increase was not being honored.

The actions of the parties to this proceeding are more readily observed as parallel courses on separate and distinct tracks destined

never to meet on common ground, rather than as the orderly and more precise process contemplated in the procedure set forth by statute and appropriate administrative rules. We find, however, from the record before us, that the August 2, 1988 letter was not, nor was it intended to be, an appeal from a Personnel ruling.

## II. *Employee Classification Process*

Pursuant to the requirement that the State classify its employees into labor grades, RSA 21-I:42, and provide for an appeals process, RSA 21-I:57, Personnel has adopted procedures whereby employees may plead an adjustment in their classification, N.H. ADMIN. RULES, Per 306. As with most administrative regulations, Personnel rules must comply with the notice and comment requirements of the New Hampshire Administrative Procedure Act, RSA ch. 541-A (in particular, the notice and comment features of RSA 541-A:3), and are presumptively valid once they have complied with these requirements. *Winn v. Jordan*, 101 N.H. 65, 133 A.2d 485 (1957).

The rules as promulgated contain detailed procedures under which an employee requesting reclassification may confer with successively more senior people until the employee either obtains satisfaction or runs out of places to appeal. The steps begin when the employee brings the complaint to his or her immediate supervisor; if one exists, the employee may then meet with an intermediate supervisor; a meeting with the head of the employee's agency is next; if the employee is still unsatisfied, he or she may bring the classification problem to the director of Personnel; and finally, the case can be appealed to the PAB. N.H. ADMIN. RULES, Per 306.04. This court normally is the last venue for relief.

The Nurses followed the rules, and the upgrading was "recommended." Personnel, on the other hand, instead of following the regulations, later inserted new ones: "It was [their] responsibility to accept or appeal [the reclassification] decision." Personnel ascribed these procedures to regulations, but the rules carry no requirement that the Nurses affirmatively *accept* a Personnel decision. Thus, the initial question (although not raised by either party in this case) is whether Personnel can set up additional requirements when valid regulatory procedures are in place.

The standard of review for agency action is well known: "[T]he order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or

unreasonable." RSA 541:13; *see, e.g., Appeal of Maddox a/k/a Cookish*, 133 N.H. 180, 184, 575 A.2d 1, 4 (1990).

■■ Personnel had in place properly-promulgated and applicable regulations. Instead of following them, it in effect suspended them and inserted new ones, without benefit of compliance with the Administrative Procedure Act, RSA ch. 541-A. The law requires that "[a]n administrative agency must follow its own rules and regulations," *Petition of State Police*, 126 N.H. 72, 76, 489 A.2d 103, 106 (1985), and an agency may not undertake *ad hoc* rule-making:

> "[A]n unwritten, verbally promulgated regulation that was put into effect at some unknown time . . . [is without effect because] there [was] no indication that the unwritten regulation on which the [agency] relies met any of the basic requirements of our Administrative Procedures Act. . . . We stress that State agencies must comply with the Administrative Procedures Act if their 'rules' are to have effect."

*Appeal of John Denman*, 120 N.H. 568, 573, 419 A.2d 1084, 1088 (1980) (emphasis and citations omitted); *see also Appeal of Marmac*, 130 N.H. 53, 57, 534 A.2d 710, 713 (1987); *Petition of Daly*, 129 N.H. 40, 523 A.2d 52 (1986).

When Personnel has before inserted regulations outside the process provided in RSA chapter 541-A, this court has repeatedly ruled against such practice. *Appeal of Elaine Fugere*, 134 N.H. 322, 331, 592 A.2d 518, 523–24 (1991); *Petition of Daly supra; Hunt v. Personnel Commission*, 115 N.H. 713, 716, 349 A.2d 605, 608 (1975).

## III. *Remedy*

Having found that the agency acted unlawfully in imposing an acceptance condition, we consider the question whether the Nurses are entitled to retroactive pay, and address four related issues.

The first issue is whether Personnel granted the upgrading. The regulations prescribe that

> "[t]he director will review the entire matter, . . . and *recommend* in writing to the employee . . . and to the agency head concerned within 15 working days from the date the request is received what further action, if any, in accordance with existing statutes and rules may be justified."

N.H. ADMIN. RULES, Per 306.04(c)(4) (emphasis added). The regulation does not demand approval of an upgrade; it says that the director need only "recommend" it. In its letter to the Nurses, Personnel

wrote that it *"recommends . . .* that the LPN position be upgraded from Salary Grade 11 to Salary Grade 12." (Emphasis added.) Personnel used the same word—"recommend"—in its letter and in its regulation. It would not be credible to assert in this context that the word means two different things.

Personnel is allowed some discretion, as the statute allows the director to recommend further action. However, the recommendation must be made simultaneously to both the employee and the agency head, and it is *that* recommendation which may contain a statement of further actions. The rule does not contemplate that there be further actions, such as Personnel attempted here, before the recommendation is sent to the agency head. Second, the further actions must be "in accordance with existing statutes and rules." Here the further actions were in contravention of the existing regulation, and even in contravention of the rule enunciated earlier in the same sentence. For these reasons, we find that the upgrading was properly granted.

■ The second issue is whether the Nurses were required to affirmatively accept the upgrading, as Personnel's letter requests. Since *ad hoc* rulemaking is unlawful, the answer must necessarily be no.

The third issue is the legal effect of the Nurses' appeal and subsequent withdrawal. Because Personnel's "requirement" had no legal consequence, the Nurses are presumed to have accepted if they did not reject. The law creates the presumption: "If no request for appeal to the commission is made, . . . the grievance will be considered closed." N.H. ADMIN. RULES, Per 306.04(c)(5)a. Here the Nurses did initially reject by filing an appeal, but then withdrew the rejection by withdrawing the appeal before any action had been taken on it.

■ Strict rules of court procedure do not normally apply in an administrative context. *New England Tel. & Tel. Co. v. State*, 113 N.H. 92, 101, 302 A.2d 814, 821 (1973). However, the procedural consequences of a civil voluntary nonsuit and of dismissal of a criminal misdemeanor appeal provide ready analogies to the consequence of withdrawing an administrative agency appeal.

■■ A voluntary nonsuit is allowable after an appeal has been taken, *Simpson v. Gafney*, 66 N.H. 477, 30 A. 1120 (1891), up until the time at which it would be "'manifestly unjust to the other side'" to allow it, *Total Service, Inc. v. Promotion Printers, Inc.*, 129 N.H. 266, 268, 525 A.2d 273, 275 (1987) (quoting *Wright v. Bartlett*, 45

N.H. 289 (1864)) (emphasis omitted). The effect of a nonsuit taken after an appeal is to let the judgment of the court below "stand as if no appeal had been taken." *Simpson v. Gafney, supra* at 477, 30 A. at 1120. In the case at hand, the Nurses' appeal was withdrawn before Personnel had taken action on it, and thus before any prejudice can be claimed to have occurred.

██ Likewise, an analogy can be made to misdemeanor appeals. In New Hampshire, misdemeanor defendants originally tried in a district or municipal court often seek *de novo* review in the superior court, RSA 599:1. If a defendant fails to prosecute or withdraws such an appeal, the verdict and sentence rendered by the original court must be carried into effect. RSA 599:3, 4. Based on these analogies, we hold that the original one-point upgrading decision of Personnel became effective and is, in effect, reinstated.

██ Finally, "[t]he regulations in force at the time administrative proceedings take place govern," *Chilcott v. Orr*, 747 F.2d 29 (1st Cir. 1984). In 1986, the regulations then in place provided for retroactive pay, N.H. ADMIN. RULES, Per 306.04(c)(5)d; thus, on the record before us, the Nurses are entitled to its benefit.

*Reversed and remanded.*

All concurred.