Personnel Appeals Board
No. 93-158

APPEAL OF GEORGE GIELEN
(New Hampshire Personnel Appeals Board)

December 30, 1994

*Michael C. Reynolds,* general counsel, State Employees' Association of New Hampshire, Inc., of Concord, by memorandum and orally, for the petitioner.

*Jeffrey R. Howard,* attorney general (*Lucy C. Hodder,* assistant attorney general, on the memorandum, and *Christopher Reid,* assistant attorney general, orally), for the State.

JOHNSON, J. The petitioner, George Gielen, challenges the decision of the New Hampshire Personnel Appeals Board (the board) upholding

the termination of his employment at the New Hampshire Board of Nursing (NHBN). We affirm.

In 1982, the petitioner began work at the NHBN as coordinator of nursing. On June 25, 1991, the petitioner applied for new employment with the bureau of health facilities administration. On his job application, the petitioner indicated that he was prepared to start work at the bureau on July 18, 1991.

On July 10, 1991, the petitioner submitted a note to his NHBN supervisor, Dr. Nuttelman, stating that he had a medical appointment on July 15 and anticipated being absent from work for an indefinite duration. The petitioner stated that his absence was not indicative of any intent to resign. Sometime between July 10 and July 15, the petitioner removed from his office telephone logs belonging to the State and all his personal belongings. In addition, he asked the leave clerk to forward his leave totals and personal mail to his home address.

The petitioner did not report for work on July 15 and called in sick. On the petitioner's application for sick leave dated July 15, 1991, he certified that his incapacitation was due to extreme stress, hypertension, and premature ventricular and auricular contractions. That same day, the petitioner missed an appointment with a dietician at his cardiologist's office but went to the office to explain that his cardiac difficulties had subsided.

In letters dated July 18 and 19, 1991, Dr. Nuttelman asked the petitioner to have his doctor send confirmation of the claimed cardiac problems. Dr. Nuttelman also asked the petitioner to advise her as to how long he expected to be absent from work. The petitioner's cardiologist, Dr. Chan, submitted a letter dated August 2, 1991, to Dr. Nuttelman. According to Dr. Chan's letter, although the petitioner had experienced some cardiac irregularities in May 1991, he had recently told Dr. Chan that he was "feeling fine without anymore [sic] palpitation symptom or irregular heartbeats."

On July 22, 1991, the petitioner telephoned the director of the State Department of Health and Human Services to discuss his application for sick leave. The director instructed the petitioner to address future employment-related communication to Dr. Nuttelman, and to submit to the NHBN documentation of his alleged cardiac problems. On August 7, 1991, the petitioner disregarded the director's instructions and delivered a letter from Dr. Chan, not to Dr. Nuttelman, but to the office of human resources. On that same day, the petitioner attended a job interview with the bureau of health facilities administration.

Dr. Nuttelman sent the petitioner his first official warning letter on August 20, 1991. The five-page warning states in part:

> Your failure to comply with written instructions regarding your employment situation constitutes willful insubordination.

Willful insubordination constitutes an offense for which an employee may be discharged without prior warning pursuant to Per 308.03 (c) (2) b of the Rules.

. . . .

Willful falsification for leave requests pursuant to 308.03 (c) (2) e constitutes a second option discharge offense for which an employee may be discharged without prior warning. Although you have a pending request for sick leave, you have been actively seeking alternative employment and participated in an employment interview on August 7, 1991 at 1:30 p.m. Sick leave within the meaning of the Rules and Collective Bargaining Agreement is intended solely for the purpose of providing employees protection against lost income due to illness or injury. . . . Failure to return to work constitutes absence without leave and willful falsification for leave request.

. . . .

Your failure to substantiate an accurate, medically acceptable diagnosis provided by a licensed medical health-care provider by verifying your claims of "hypertension, PVC's and PAC's" as certified by you on your July 15, 1991 sick leave request, is considered further evidence of falsification for sick leave and will result in your immediate discharge from employment pursuant to Per 308.03 (c) (2) e of the Rules.

On August 26, 1991, another cardiologist, Dr. Deloge, reviewed the petitioner's medical records kept by Dr. Chan. Dr. Deloge informed Dr. Nuttelman that the petitioner's premature ventricular and auricular contractions were not so disabling as to preclude the petitioner's attendance at work. On August 30, 1991, the petitioner contravened the director's orders and again contacted someone other than Dr. Nuttelman to discuss employment matters.

Dr. Nuttelman sent the petitioner his second official warning letter on September 20, 1991. This warning referred to the previous warning and expressed an intent to discharge the petitioner because he had neither submitted a medical diagnosis documenting his cardiac problems nor returned to work. The letter informed the petitioner that he could avoid termination by reporting to Dr. Nuttelman at the NHBN on September 25, 1991, and by providing an explanation for his previous conduct. Despite this letter, the petitioner neither met with Dr. Nuttelman nor accounted for his absenteeism.

On September 26, 1991, Dr. Nuttelman sent the petitioner a final notice, which advised him that his discharge would take effect on September 27, 1991.

The petitioner appealed his discharge. After a hearing, the board ruled in favor of the NHBN. The petitioner's motion for reconsideration was denied, and this appeal followed.

The petitioner argues that the board's decision should be reversed because: (1) his dismissal was based upon infractions for which he had already been disciplined; (2) his supervisor did not consider in good faith his application for sick leave; (3) he did not receive the two warnings and proper final notice required for a dismissal premised upon unapproved leave; (4) the evidence does not support a dismissal based on willful falsification and insubordination; (5) his dismissal was related to a disabling condition; and (6) the board did not fairly consider his appeal.

RSA 541:13 (1974) provides the applicable review standard:

> Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the [board] to show that the same is clearly unreasonable or unlawful, and all findings of the [board] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

We now address the petitioner's six contentions seriatim.

First, the petitioner argues that since the warning letter dated August 20, 1991, chastised him for his falsification of a sick leave form and for his insubordinate conduct, any future dismissal premised upon those behaviors would be improper. This assertion lacks merit. The August 20 warning letter apprised the petitioner that his defiance of the director's explicit instructions to communicate only with Dr. Nuttelman constituted insubordinate behavior. The insubordinate behavior that justified his later dismissal was the petitioner's refusal to meet with his supervisor, to explain his transgressions, and to return to work.

The August 20 warning further apprised the petitioner that his persistent failure to return to work constituted willful falsification of a sick leave request. Thus, the NHBN chose to treat the petitioner's falsification as a continuing offense for which he could take corrective action. The personnel rules, which both parties contend apply, allow the NHBN to dismiss an employee charged with falsifying leave requests without a warning. N.H. ADMIN. RULES, Per 308.03(c)(2)e

(1985) (current version at Per 1001.08(b)(6)a (1992)). That the NHBN allowed the petitioner time to take remedial action in this instance did not render improper his later dismissal for continued dereliction.

■ Second, the petitioner argues that his supervisor did not consider in good faith his application for sick leave. He asserts that Dr. Nuttelman's testimony that she considered his application to be improper in form proves that she disregarded completely his leave request. This argument is untenable. The petitioner's intentional misrepresentation of his physical condition, not the form of his request, was the primary issue throughout the weeks following the submission of his request. Indeed, Dr. Nuttelman consistently focused on the application's substance and not once remarked upon the application's form at any time before the board hearing.

Third, the petitioner argues that his dismissal was invalid because the NHBN violated the personnel rules. Specifically, the petitioner complains that the NHBN did not give him two warnings and a proper final notice before terminating his employment.

■ The Administrative Procedure Act requires administrative agencies to follow their own rules and regulations. *Appeal of Nolan*, 134 N.H. 723, 728, 599 A.2d 112, 115 (1991). Where employment termination is involved, substantial violations of the rules render a dismissal invalid. *Appeal of Fugere*, 134 N.H. 322, 329, 592 A.2d 518, 522 (1991). The board made no explicit finding as to whether the NHBN complied with the personnel rules. Thus, we consider whether the NHBN violated the rules, and if so, whether such violations were substantial.

■ The personnel rules state that an employee's absenteeism without approved leave must be handled as follows:

> a. One or more oral warnings may be given to the employee by the appointing authority. At the appointing authority's discretion, any number of oral warnings may be given depending upon the attitude of the employee and the appointing authority's judgment of the seriousness of the offense. It is the appointing authority's responsibility to point out the specific nature of the offense and discuss in detail with the employee the correct action to be followed in the future.

> b. If the appointing authority feels oral warnings have been, are, or would be ineffective or insufficient in view of the attitude of the employee, and/or the nature of the offense, a written warning shall be prepared. Warnings must indicate

that unless corrective action is taken the employee will be subject to discharge.

. . . .

e. Employees who receive 2 written warnings for the same offense may be discharged by receipt of a final written notice of subsequent violation for that offense.

N.H. ADMIN. RULES, Per 308.03(c)(4) (1985) (current version at Per 1001.03, 1001.08(e)(1) (1992)).

Admittedly, the first official warning, dated August 20, 1991, did not cite the personnel rule regarding unapproved absenteeism, N.H. ADMIN. RULES, Per 308.03(c)(3)b (1985) (current version at Per 1001.03(a)(3), 1001.08(e)(1) (1992)). The warning's explicit advisement that the petitioner's truancy constituted absence without approved leave, however, rendered the letter a valid warning for that offense. We note that the warning distinctly stated that failure to return to work constituted both unapproved absence and willful claim falsification. The NHBN appears to have treated these two offenses interchangeably.

The second official warning, dated September 20, 1991, specifically referred to the first official warning. Although the September 20 warning neither reiterated the detail of the first warning nor specifically alerted the petitioner to the impropriety of his unapproved absence, it noted his failure to return to work and made clear the NHBN's intent to incorporate the substance of the first warning into the second.

In the petitioner's final notice, dated September 26, 1991, the NHBN declared its intent to terminate the petitioner's employment on the express account of his continued unapproved absence.

■ The purpose of the warning requirement is to notify employees that they have committed an offense, and to instruct them on the proper future course of conduct. *Appeal of Fugere*, 134 N.H. at 331, 592 A.2d at 524. Here, the two warnings apprised the petitioner of the specific corrective action required of him to avert dismissal. Moreover, two letters sent prior to the official warnings also advised the petitioner of the need to substantiate his leave application. Thus, we discern no prejudice to the petitioner arising from any failure of the second warning to specify the exact nature of the petitioner's offense.

■ Fourth, the petitioner argues that the board abused its discretion in upholding his dismissal based on willful insubordination and falsification. He claims that no evidence justified these charges. We disagree. The record contains ample support for the board's affirmation of the petitioner's discharge for willful insubordination. The NHBN directed the petitioner to report to work, to produce medical

documentation of his claimed cardiac ailments, or to provide an explanation for his conduct. Dr. Nuttelman forewarned the petitioner that his refusal to do so would be tantamount to willful insubordination, and would result in the termination of his employment. The petitioner's disregard of this warning justified his discharge for willful insubordination.

■ The board's affirmation of the petitioner's discharge for willful falsification of a sick leave application was also proper. The evidence sustains the board's finding that the petitioner deliberately gave Dr. Nuttelman the false impression that a heart condition required his absence from work. At the time he submitted his leave application, the petitioner had no cardiovascular complaints. Yet he certified that hypertension and premature ventricular and auricular contractions necessitated his extended leave from work. The record does indicate that the petitioner was experiencing "extreme stress," which he also certified on his leave request. His application, however, gave the distinct and misleading impression that his primary concern was his heart condition. We therefore uphold the board's finding that the petitioner's purposeful deceit warranted the falsification charge.

■ Fifth, the petitioner argues that the board violated RSA 21-I:58, I, which requires reinstatement whenever a dismissal is "for any reason related to . . . [a] disabling condition." RSA 21-I:58, I (Supp. 1993). The statute does not delineate the conditions for which the rule affords protection; however, the legislature specifically designed another law, RSA chapter 354-A, to protect disabled people from employment discrimination. RSA 354-A:1 (Supp. 1993). Thus we use RSA chapter 354-A for assistance in interpreting the similar proscription against such discrimination in RSA 21-I:58, I. *See Petition of Public Service Co. of N.H.*, 130 N.H. 265, 282, 539 A.2d 263, 273, *appeal dismissed sub nom. Public Service Co. of N.H. v. New Hampshire*, 488 U.S. 1035 (1988).

RSA chapter 354-A defines "physical or mental disability" as a "physical or mental impairment which substantially limits one or more of such person's major life activities." RSA 354-A:2, IV (Supp. 1993). The statute permits employers to discharge a disabled person if such discharge is based upon a bona fide occupational qualification. RSA 354-A:7, I (Supp. 1993).

The petitioner does not specify his disabling condition. As the petitioner's cardiovascular complaints were unsubstantiated, we assume he considers his "extreme stress" to be the relevant disability for purposes of the statute. The petitioner maintains that his stress does not interfere with his ability to work, but that it interferes with his ability to work with Dr. Nuttelman.

Because the contested dismissal did not relate to the petitioner's "extreme stress," we need not decide whether stress generated by contact with one's supervisor "substantially limits" a "major life activity," nor whether an ability to work with one's supervisor is a bona fide occupational qualification.

■■■ The petitioner does not attribute his dismissal to prejudice against people suffering from extreme stress. Rather, the petitioner asserts that RSA 21-I:58, I, requires reinstatement not only when a dismissal is a product of illegal discrimination, but also whenever a dismissal relates in any way to a disabling condition. Thus, the petitioner concludes that because this case involves a dispute over the existence of a disabling condition, he must be reinstated. This argument is unpersuasive. If the petitioner were correct, falsifying a disability on a sick leave application could never justify dismissal. Common sense dictates that we reject the petitioner's interpretation of the statute. Accordingly, we uphold the board's determination that RSA 21-I:58, I, does not require the petitioner's reinstatement.

Finally, the petitioner argues that the board did not fairly consider his appeal. He contends that the board's "disingenuous finding that Per 307.06(c)(1) supports the termination" warrants reversal. Per 307.06 sets forth the requirements for requesting a leave of absence without pay. The rule instructs employees that failure to report to work upon the expiration of leave time, "except for satisfactory reasons submitted in advance, shall be cause for dismissal." N.H. ADMIN. RULES, Per 307.06(c)(1) (1985) (current version at Per 1205.02(e) (1992)). The petitioner complains that the rule cannot form the basis of his dismissal because it contemplates that leave be granted and then expire, and the NHBN never granted him leave. Nevertheless, we disagree with the petitioner's contention. Whether the board found the rule to further justify the NHBN's actions is irrelevant because other sections of the personnel rules amply support the dismissal. Moreover, we do not find the board's determination to be so erroneous as to evince partiality toward the NHBN.

*Affirmed.*

All concurred.