Personnel Appeals Board
No. 2007-297

## APPEAL OF DONALD W. MURDOCK
## (New Hampshire Personnel Appeals Board)

Argued: January 16, 2008
Opinion Issued: February 15, 2008

*Vanacore Law Office*, of Concord (*John G. Vanacore* and *Natalie J. Friedenthal* on the brief, and *Mr. Vanacore* orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Lynmarie C. Cusack*, assistant attorney general, on the brief and orally), for the respondent.

GALWAY, J. The petitioner, Donald W. Murdock, appeals the decision of the New Hampshire Personnel Appeals Board (PAB) affirming his dismissal from employment by the respondent, the New Hampshire Department of Transportation (DOT), following his receipt of three written warnings for the same offense within a five-year period. N.H. ADMIN. RULES, Per 1001.08(b)(1) (current version at 1002.08(c)(1)). We affirm in part, reverse in part, and remand.

We recite the facts as found by the PAB or as presented in the record. The petitioner was hired by the DOT in February 1994. He worked in various positions until the fall of 2002, when he became the Highway Patrol Foreman for one of the fourteen patrol sections in District IV. District IV is one of the six maintenance districts within the State. In this capacity, the petitioner was responsible for planning, scheduling and inspecting the work of his five-man patrol crew in coordination with his immediate supervisor, Maintenance Supervisor George Leel, as well as the District Engineer, Douglas Graham. The petitioner was also responsible for enforcing, among other things, DOT policies and procedures within his section, and producing timely and accurate reports of the work activities of his crew.

On May 12, 2003, District Engineer Graham issued the petitioner his first letter of warning for transporting alcohol in his state vehicle contrary to DOT policy. Specifically, it was alleged that the petitioner, after work hours, purchased beer at a local convenience store and transported the alcohol to his home in his state vehicle. The warning cited the petitioner's "failure to meet any work standard" under New Hampshire Administrative Rule, Per 1001.03 (a)(1) (current version at 1002.04(b)(1)) as grounds for the warning. The corrective action provided,

> As a Highway Patrol Foreman, you are expected to set the standard for your Patrol Section .... You must ensure that you follow those rules and standards in your own conduct and enforce those rules and standards among the members of your crew. Your failure to do so will result in further disciplinary action up to, and including, your discharge from employment.

The petitioner did not appeal the issuance of this warning.

On September 20, 2004, District Engineer Graham issued a second letter of warning to the petitioner, again citing Per 1001.03(a)(1) (failure to meet any work standard). This warning resulted from the petitioner having allowed Sports Illustrated swimsuit model calendar pictures to be

displayed in the workplace after he had been told to remove them. Although the petitioner removed the pictures from display on the wall after being instructed to do so, several were later found "scattered about" on a desk within the office. The warning stated that the petitioner's "failure to ensure a workplace free from the potential for harassment . . . constitutes a failure to meet any work standard." In addition, the warning alleged the petitioner failed to maintain a safe workplace, noting several tripping hazards in the office, as well as the presence of a wash basin without the proper caution warnings, all constituting a failure to meet any work standard. The corrective action for these various infractions, as with the first warning, generally instructed the petitioner that he must follow, and ensure his crew followed, the applicable rules and standards.

The petitioner challenged this warning, seeking review through the informal four-step review process outlined in the personnel rules, rather than a direct appeal to the PAB. N.H. ADMIN. RULES, Per 202.01 (current version at 205.01). At each of the first three review steps, the warning was upheld after the petitioner filed a timely appeal statement. However, at the fourth and final step, the petitioner did not file his appeal statement within the prescribed period of time, and was denied consideration. The petitioner appealed to the PAB, which in November 2005 denied his request as untimely.

On July 15, 2005, the petitioner was issued a third warning for failure to meet any work standard. The warning detailed numerous alleged deficiencies in the petitioner's conduct including exercising poor judgment in parking his state vehicle outside of a restaurant later than the normal lunch hour and for a period longer than thirty minutes. Specifically, District Engineer Graham alleged he had observed the petitioner's state vehicle parked outside of a restaurant at 1:15 p.m. and observed the petitioner leaving at 1:50 p.m. The warning indicated that the petitioner showed poor judgment in taking a late lunch, and also taking a lunch that was at least thirty-five minutes, five minutes more than the permitted time. The warning also alleged the petitioner had left work early without receiving prior approval from his supervisor and had failed, on at least one occasion, to accurately document the work time of his crew.

The warning also served as a letter of dismissal pursuant to Per 1001.08(b)(1), which permits dismissal of an employee after three written warnings for the same offense within a five-year period. See N.H. ADMIN. RULES, Per 1001.08(b)(1). The letter articulated the two previous written warnings for failure to meet any work standard, in addition to the current warning, as grounds for the petitioner's dismissal.

The petitioner appealed both the warning and his dismissal directly to the PAB. Following a hearing, the PAB upheld the dismissal, concluding,

> All three warnings issued to the [petitioner] were issued in accordance with Per 1001.03(a) ... and each was for the "same offense" as contemplated by that rule, as each of the warnings arose from the [petitioner's] lack of familiarity with, or disregard for, the policies and procedures governing the [petitioner's] responsibilities as a Highway Patrol Foreman.

The petitioner filed a motion for reconsideration and rehearing, arguing that the PAB's interpretation of Per 1001.08(b)(1) was unreasonable and violated due process. In addition, the petitioner asserted that the PAB should have waived his failure to meet the filing deadline and considered his appeal of the September 20, 2004 warning. The petitioner also argued that, with respect to the July 15, 2005 warning, the evidence presented and the PAB's findings of fact were insufficient to sustain his dismissal, and further, that the PAB should have reassigned him, rather than affirming his dismissal. The PAB denied the motion.

This is an appeal from a final decision of the PAB pursuant to RSA 21-I:58, II (2000), RSA 541:6 (2007) and Supreme Court Rule 10. The petitioner has the burden of demonstrating that the PAB's decision was clearly unreasonable or unlawful. RSA 541:13 (2007). The PAB's findings of fact are deemed *prima facie* lawful and reasonable. *Id.* We will affirm the decision unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. *See Appeal of Waterman*, 154 N.H. 437, 439 (2006).

We review the interpretation of administrative rules *de novo. State v. Elementis Chem.*, 152 N.H. 794, 803 (2005). "In construing rules, as in construing statutes, where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Flynn*, 145 N.H. 422, 423 (2000) (quotations omitted). We look at the rule under consideration as a whole, and not in segments. *See Appeal of Alley*, 137 N.H. 40, 42 (1993). "While deference is accorded to an agency's interpretation of its regulations, that deference is not total. We still must examine the agency's interpretation to determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve." *Id.* (quotation omitted).

The petitioner first argues that the PAB misinterpreted Per 1001.08(b)(1) when it concluded that his three written warnings were for the same offense. Per 1001.08(b)(1) provides, "An appointing authority shall be authorized to dismiss an employee pursuant to Per 1001.03 by issuance of a third written warning for the same offense within a period of 5 years." The petitioner asserts that, although each warning is categorized as a failure to meet any work standard under Per 1001.03(a)(1), the actual

conduct underlying each warning is of such a different character that they cannot reasonably be considered the same offense.

The State counters that the petitioner's three warnings all constitute the same offense because, as found by the PAB, the warnings "arose from his lack of familiarity with, or disregard for, the policies and procedures governing [his] responsibility as a highway patrol foreman." The State thus contends that it is not the actual behavior underlying the warning, but the more generalized type of violation, here, the violation of policies and procedures, which must be considered for purposes of dismissal under Per 1001.08(b)(1). The State also suggests that the critical part of a letter of warning is its advised corrective action, and, therefore, that should be the primary consideration for purposes of Per 1001.08(b)(1). The State's interpretation is flawed in several respects.

First, to read Per 1001.08(b)(1) as the State suggests requires us to ignore several other provisions within the rules, and "[w]e will not interpret the rule in such a way as to render a significant portion of it meaningless." *Appeal of City of Manchester*, 149 N.H. 283, 287 (2003). Per 1001.03(a) provides,

> An appointing authority shall be authorized to use the written warning as the least severe form of discipline to correct an employee's unsatisfactory work performance or misconduct for offenses including, but not limited to:
> (1) Failure to meet any work standard;
> (2) Unauthorized absences from work;
> (3) Excessive unscheduled absences even if payment or approval for the leave is authorized;
> (4) Sexual harassment;
> (5) Exhibiting physically or verbally abusive behavior in the workplace . . .;
> (6) Working unauthorized overtime;
> (7) Failure to report immediately to the appointing authority the expiration of a license or certificate required by the class specification or supplemental job description for performance of the duties of a position; and
> (8) Unauthorized use or misuse of information or communications systems.

N.H. ADMIN. RULES, Per 1001.03(a)(1)-(8). Under the State's interpretation, every violation of any DOT policy, regulation, procedure, or class specification responsibility amounts to a failure to meet any work

standard under Per 1001.03(a)(1). It necessarily follows that the remaining listed categories are merely superfluous, as, under the State's interpretation, any behavior these categories embody would also fall under the failure to meet any work standard provision. This problem is exemplified by the alleged conduct at issue in this case—the petitioner's various warnings address behavior that arguably could have fit other categories of the rule, but were simply framed as a failure to meet any work standard. *See* N.H. ADMIN. RULES, Per 1001.03(a)(2) (warning for unauthorized absences), (a)(4) (warning for sexual harassment).

■ The State's interpretation also nullifies Per 1001.08(b)(2), which permits dismissal of an employee after five written warnings for *different* offenses within a five-year period. *See* N.H. ADMIN. RULES, Per 1001.08(b)(2) (current version 1002.08(c)(2)). If the "same offense" language of Per 1001.08(b)(1) was intended to encompass the same types of violations, as the State suggests, without any consideration of the actual behavior eliciting the warning, the distinction articulated between sections (b)(1) and (b)(2) of this rule would be meaningless. Essentially, all violations would fall within the purview of the failure to meet any work standard provision, and, without any consideration of the underlying behavior, each warning would always constitute the "same offense," negating the need for a rule allowing dismissal for "different offenses."

■ Additionally, the State's interpretation contravenes the express purpose of the written warning. Per 1001.03(b) requires that a written warning contain a narrative describing in detail the reason for the warning, and list specifically the corrective action which the employee shall take to avoid additional disciplinary action. N.H. ADMIN. RULES, Per 1001.03(b)(1)-(2). We have said, "The purpose of the warning requirement is to notify employees that they have committed an offense, and to instruct them on the proper future course of conduct." *Appeal of Gielen,* 139 N.H. 283, 289 (1994). If the State's interpretation were to prevail, however, the written warning would provide the employee no meaningful guidance on how to avoid additional disciplinary action, as any infraction may be deemed the same offense for purposes of dismissal. Indeed, as was the case here, employees would routinely receive warnings for specific instances of misconduct and be instructed to "follow the rules" in order to avoid additional disciplinary action, only to be subject to dismissal following any violation of those rules. Essentially, an employee, having recognized that a particular behavior is an offense, and avoided this behavior in the future, would not be assured that his dismissal for the "same offense" is prevented.

■ Read in the context of the rule as a whole, and in light of the purpose behind a written warning, it is clear the term "same offense" was intended to permit dismissal following three written warnings for a particular behavior, and not merely for *any* behavior that might be characterized as a similar violation under Per 1001.03(a). Furthermore, we are not persuaded by the State's contention that the principal consideration for purposes of Per 1001.08(b)(1) is the corrective action. We have recognized the importance of providing corrective action within a written warning in other contexts. *See, e.g., Appeal of Gielen,* 139 N.H. at 289; *Appeal of Fugere,* 134 N.H. 322, 331 (1991). However, although corrective action is a required element under the rules and an integral part of the warning's purpose, similarity of corrective action is not the appropriate measure for purposes of determining whether warnings constitute the "same offense" under Per 1001.08(b)(1). The plain language of Per 1001.08(b)(1) focuses on the nature of the offense itself, requiring that each *offense* be the *"same."* The corrective action is the remedy to the offense, not a part of the offense itself. The rule makes no mention of corrective action, nor is it clear to us how the remedy for a particular offense would be relevant to the "same offense" determination, even if identical for several different behaviors. Because the PAB's interpretation of Per 1001.08(b)(1) was in error, we reverse its determination and remand for further proceedings, if any, consistent with this opinion.

Because the validity of both his second (September 20, 2004) and third (July 15, 2005) warnings may arise again in the future, we will address the petitioner's challenges to them. With respect to the September 20, 2004 warning, which was on appeal at the time of the hearing, the petitioner submits that the PAB should have used its discretion to waive the fifteen-day filing deadline, and considered the merits of that appeal. Per 202.02 and Per 202.03 outline a four-step procedure through which an employee may dispute the application of any personnel rule. *See* N.H. ADMIN. RULES, Per 202.01-202.03 (current version at 205.02-205.03). The rule provides that, at each step, "[t]he employee shall present a detailed written description of the basis for the dispute" to the appropriate party within fifteen calendar days following the preceding step's final decision. *Id.* 202.02(a)(3); *see also id.* 202.02(b)(1), (c)(2), 202.03(a). Here, the petitioner does not dispute that he did not file this statement within the fifteen-day deadline when initiating the fourth step. However, he argues that, because he had met all filing deadlines before this, and because the DOT had failed to meet several of its time limitations further delaying his appeal, it was unfair for the PAB not to consider his appeal. We are not persuaded.

■ The petitioner argues that it is unfair for the PAB not to consider his appeal, despite the fact it was untimely, because the DOT had also failed to meet several of its time requirements under Per 202. N.H. ADMIN. RULES, Per 202.02, 202.03. Like the time constraints placed upon the petitioner, Per 202 sets a fifteen-day deadline for the reviewing party to render its decision on the petitioner's appeal. *Id.* 202.02(a)(4), (b)(3), (c)(6), 202.03(c). Although not specified by the petitioner, it appears from the record that, on at least one occasion, the decision of a reviewing party was rendered after this fifteen-day deadline. However, what the petitioner fails to note is that Per 202 provides a remedy in the event of such a delay. Specifically, the rule provides that, should a decision at any of the four steps fail to be rendered within the prescribed fifteen days, the employee "shall have the option" of proceeding to a further step in the appeal. *See* N.H. ADMIN. RULES, Per 202.02 (a)(6), (b)(4), (c)(7), 202.03(e).

Here, the petitioner has not argued, nor does the record reflect, that he ever availed himself of this remedy in order to minimize the delay in his appeal. Nor is there any evidence that he raised any objection to an untimely decision by the reviewing party. Thus, the DOT was not without consequences for its failure to satisfy this time deadline, had the petitioner chosen to enforce it. Further, the Administrative Procedure Act requires administrative agencies to follow their own rules and regulations. *See Appeal of Gielen,* 139 N.H. at 288. Per 202.04, titled "Invalid Appeals," provides, in pertinent part: "The following matters *shall not* be subject to . . . appeal under Part Per 202: . . . (h) untimely appeals." N.H. ADMIN. RULES, Per 202.4(h) (emphasis added). The petitioner does not dispute that this appeal statement was untimely under the applicable rules. Given these facts, we cannot conclude that it was error for the PAB to decline to hear the petitioner's appeal.

■ Finally, the petitioner challenges the sufficiency of the PAB's ruling with respect to his July 15, 2005 warning, arguing that the PAB merely summarized the evidence without making any findings of fact, and that its ruling is therefore invalid. We disagree. RSA 541-A:35 (2007) requires that the PAB's final decision include findings of fact and conclusions of law, separately stated. It further provides that "[f]indings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." *Id.* "The purpose of this requirement is to provide this court with an adequate basis upon which to review the decision of the administrative agency." *Petition of Support Enforcement Officers,* 147 N.H. 1, 9 (2001).

Upon review of the PAB's decision, we conclude that the PAB's findings of fact, coupled with the narrative decision following its findings, provides

adequate basis for our review. Although the specific finding of fact with regard to the third warning appears only to set forth the DOT's grounds for issuing the warning, the PAB used the third warning to support its dismissal determination, affirming the issuance of the warning. Thus, although the PAB could have made more specific findings, the totality of its decision allows for effective judicial review and provides a sufficient statement of the underlying facts to support its determination. We therefore will not vacate it on that basis. *Cf. Petition of Support Enforcement Officers*, 147 N.H. at 9 (when an agency structures its decision solely by summarizing evidence and opposing views, decision will be vacated and remanded).

Based upon our determinations above, we do not reach the petitioner's remaining arguments.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.