PAUL E. AND Y. KAREN KEROUAC

v.

TOWN OF HOLLIS

June 1, 1995

*Richards, Gawryl & MacAllister,* of Nashua (*Joseph W. MacAllister* on the brief and orally), for the plaintiffs.

*Nixon, Hall & Hess, P.A.,* of Manchester (*David W. Hess* and *Kathryn B. Johnston* on the brief, and *Mr. Hess* orally), for the defendant.

JOHNSON, J. The defendant, the Town of Hollis, appeals from a Superior Court (*Goode,* J.) order awarding the plaintiffs, Paul E. And Y. Karen Kerouac, damages and attorney's fees pursuant to 42 U.S.C.

§§ 1993 and 1988 and New Hampshire law. At issue is whether the trial court properly found that the defendant had violated the plaintiffs' constitutional rights to due process and equal protection. We reverse.

The plaintiffs owned a thirteen-acre parcel of land in the Town of Milford. Plaintiff Paul E. Kerouac purchased this land in 1970 in order to create a large pond by excavating approximately 1100,000 cubic yards of earth materials. In 1971, Mr. Kerouac began clearing and digging the land. The land had been cleared of trees and stumps by 1985, at which time the plaintiffs escalated their digging.

The plaintiffs' land fronted on Laurel Hill Road, which runs through Milford and Hollis. This road provided the only vehicular access to the property. The road had been built in 1970 and was a class V highway. Towns are responsible for the maintenance of class V highways, which are known as town roads. RSA 229:5, VI (1993). Laurel Hill Road ranged in width from seventeen to twenty feet and had sand shoulders. Every four to five years the Town of Hollis arranged for the road to be oiled and sanded. The Hollis Director of Public Works (road agent) felt that such reinforcements enabled Laurel Hill Road to support the volume of traffic it ordinarily received.

The Hollis Board of Selectmen governs the Town of Hollis and is authorized to act on the town's behalf. Witnesses for the Town of Hollis testified that the selectmen routinely dealt with projects that entailed the trucking of excavated gravel across town roads. These witnesses testified to the following: In general, when the town received notice of a project, the selectmen would first determine which roads the project would affect. The selectmen would then ask the road agent to assess the ability of those roads to withstand the weight of the excavated materials to be hauled. Based upon the road agent's assessment, the selectmen would address the trucking problem in one of two ways. Often the selectmen would require the excavators to restore the road after having completed their project. If the road was in poor condition or if the planned operation involved a great deal of trucking, however, the selectmen would require the excavator to restore the road before beginning the project and again after the project was complete. Before imposing any requirements, the selectmen usually would discuss the matter with the excavator.

On May 5, 1986, the Hollis road agent learned that the plaintiffs had applied to the Milford Planning Board for a permit to excavate earth products on their Milford property. That day, the Hollis road agent notified the Hollis selectmen that such a project might entail intense use of Laurel Hill Road in Hollis. He cautioned the Hollis selectmen that Laurel Hill Road would not withstand a constant flow of heavy trucks. Ordinarily the Hollis selectmen had the ability to control excavators because the town had the power to issue or not issue

permits for excavations within town limits. Here, however, the Hollis selectmen faced an unusual situation in that the plaintiffs' planned excavation site was in Milford, whose planning board had the authority to grant the plaintiffs a permit. The Hollis selectmen therefore requested further information from the Milford selectmen before taking any action regarding the plaintiffs' use of Laurel Hill Road.

On July 7, 1986, the Hollis road agent notified the Hollis selectmen that the plaintiffs had begun hauling gravel in heavy trucks on Laurel Hill Road. Pursuant to the road agent's request, the Hollis selectmen asked the Milford Planning Board to enjoin the plaintiffs' trucking so that the Town of Hollis could take measures to ensure the road's protection.

On September 15, 1986, the Hollis Board of Selectmen met with the plaintiffs. At this meeting the plaintiffs described their plans for building the pond. The selectmen informed the plaintiffs that they were concerned about Laurel Hill Road and asked the plaintiffs to post a bond in order to protect the town from incurring costs stemming from the plaintiffs' venture. The plaintiffs stated that they would "be glad to" repair any damage caused by their trucking. Because the Town of Milford had not yet issued the plaintiffs a permit to excavate, however, the Hollis selectmen treated the plaintiffs' plans as tentative and made no official decisions regarding the matter.

On April 8, 1987, the plaintiffs met with the Hollis selectmen, the Hollis road agent, and members of the Milford Planning Board. At this meeting, the plaintiffs explained the scope of their project. They presented a document that detailed their plans to haul approximately 100,000 cubic yards of excavated material in ten-wheeled and eighteen-wheeled trucks. Fully loaded, these trucks would weigh respectively 55,000 pounds and 80,000 pounds. The plaintiffs indicated that they planned to make a total of forty-eight trips each day in these trucks. The Hollis road agent estimated that one ten-wheeled truck would cause as much wear and damage as 3200 ordinary automobiles, and that forty-eight trips each day in these trucks would cause as much wear and damage to Laurel Hill Road as 165,000 automobiles. The Hollis road agent questioned whether Laurel Hill Road could withstand such intense traffic. He suggested that before beginning their project, the plaintiffs upgrade the 1056 feet of Laurel Hill Road over which they planned to haul the excavated materials. He estimated that the road's upgrade would cost the plaintiffs approximately $100 per foot.

Mr. Kerouac responded to the road agent's suggestion by stating that he had "no legal obligation to the Town of Hollis." The road agent reminded the selectmen that they had required another developer to upgrade a road before embarking on a project and urged the selectmen to require the same of the plaintiffs. The plaintiffs asked whether the

Town of Hollis would be more amenable to their situation if they modified their plans and excavated less material. The selectmen agreed that a smaller excavation would pose less of a problem. Because they anticipated that further discussions would occur after the plaintiffs had received an excavation permit, the selectmen took the matter under advisement but made no official decisions. The selectmen did, however, arrange for a professional evaluation of Laurel Hill Road to determine its capacity to withstand the pressure of extensive trucking.

On April 28, 1987, the Milford Planning Board held a public hearing on the plaintiffs' request for a permit to excavate. The board decided to issue a permit, conditioned in part on the requirement that the plaintiffs write a letter stating that they agreed to resurface and repair the 1056 feet of Laurel Hill Road over which they were planning to haul excavated materials. The Milford Planning Board sent the Hollis selectmen a letter detailing this resolution of the plaintiffs' permit request.

Mr. Kerouac submitted a letter dated May 4, 1987, to the Milford Planning Board. The letter contained one sentence: "This letter is to confirm our intentions to be responsible for the resurface/repair of .2 miles of Laurel Hill Road located in Hollis, N.H. to original condition as of this date." On May 14, 1987, the Town of Hollis Selectmen's Office received a copy of this letter.

In a letter dated May 18, 1987, the Milford Planning Board retracted the requirement that the plaintiffs resurface and repair Laurel Hill Road and issued the plaintiffs a permit authorizing them to excavate gravel and create a pond. On May 19, 1987, the plaintiffs began hauling excavated materials over Laurel Hill Road in large trucks, two or three of which travelled the road every hour.

On May 20, 1987, the Hollis selectmen received notice that the Milford Planning Board had retracted the requirement that the plaintiffs maintain, resurface, and repair Laurel Hill Road. Several times Mr. Kerouac had informed the Hollis selectmen of his belief that the plaintiffs were not legally responsible for the maintenance or repair of Laurel Hill Road. Moreover, at trial a Hollis selectman, Philip Mercer, testified that the plaintiffs had informed the Hollis selectmen that they did not intend to negotiate with the town about their excavation plans. Selectman Mercer and another selectman, Richard Walker, both testified that the selectmen therefore believed that the plaintiffs were no longer planning to cooperate with their efforts to protect the road.

That evening the Hollis selectmen met with the Hollis road agent and town counsel to discuss the situation. At this meeting the selectmen expressed their concern that tolerating heavy trucking on Laurel Hill Road without bonding and traffic control would expose the

town to liability should an accident occur. They therefore believed it necessary to compel the plaintiffs to attend a board meeting in order to resolve the matter. To that end, the selectmen sent an invitation asking the plaintiffs to discuss the matter at the plaintiffs' earliest convenience.

The selectmen also composed a list of alternative methods of dealing with the plaintiffs should the plaintiffs ignore their invitation:

1. Get injunction

2. Post road for a low limit. [Road agent] must tell town why and how town needs this.

3. Get a report from [road agent] giving history of road and his recommendation of size of trucks which can go over road.

4. Direct Police Chief to take a look at the road and assess traffic. Recommend how much traffic can safely use road and safety features involved, particularly with people who live there. Suggested referring to RSA 47:17 VII; 41:11,, 236:9-12. Need to know to what extent the public travel will be incommodated [sic].

5. Research to what extent town would be subject to expense for road damage.

6. Should have a public hearing (RSA 43:2).

The town counsel advised the selectmen that the simplest course of action would be to temporarily bar the use of large trucks on Laurel Hill Road. He believed that posting a weight limit would be an appropriate stopgap measure that would prevent damage from occurring before the selectmen and the plaintiffs settled upon a permanent resolution. At trial, selectmen Walker and Mercer testified that the Selectmen agreed that posting a temporary weight limit, which would allow the plaintiffs to use smaller trucks, was preferable to obtaining an injunction, which would bar all trucking by the plaintiffs, provoke greater hostility, and be expensive to obtain. A professional engineer testified that the impact of three six-wheeled trucks causes less wear to a road than that of a single ten-wheeled truck.

After the May 20 meeting, a Hollis selectmen who had known the plaintiffs for many years tried to confer personally with the plaintiffs by twice telephoning them and once visiting their landscaping business. Despite these efforts, the selectman was unable to reach the plaintiffs.

On June 2, 1987, the Hollis road agent tested the base and surface of Laurel Hill Road and discovered that they were substandard for heavy trucking. The road agent advised the town to protect the road by posting a gross weight limit of 24,000 pounds or less.

On June 15, 1987, the Hollis selectmen voted to adopt the road agent's recommendation of a 24,000-pound weight limit. The Hollis selectmen had never before imposed a weight limit on a town road, and the town had no formal regulations or procedures governing such weight limits. The Hollis selectmen intended the posting to be a temporary measure that would compel the plaintiffs to discuss the Laurel Hill Road situation with them.

Although the plaintiffs had trucks that weighted 23,100 pounds when fully loaded, they had planned to do the bulk of their hauling in ten-wheeled trucks that weighed 55,000 pounds. Thus the 24,000-pound limitation interfered with the plaintiffs' removal of gravel from their property. Soon after the posting, a Hollis selectman tried to visit the plaintiffs, but was unable to see them because they had posted a no trespassing sign at the entrance to their property.

On June 29, 1987, the Hollis selectmen instructed the Hollis Police Chief to ticket all trucks exceeding 24,000 pounds on Laurel Hill Road.

On July 14, 1987, the plaintiffs sent a proposal to the Hollis selectmen in which they offered to patch any potholes created by the trucks, to inspect the road each week and to institute dust control measures. The plaintiffs did not offer to bear the entire cost of road repair. Because the plaintiffs' project entailed extensive trucking, and because the selectmen felt obligated to impose the same requirements on the plaintiffs that they had imposed on other excavators in the past, the Hollis selectmen found the plaintiffs' proposed resolution to be inadequate. The Hollis selectmen did not accept the proposal, but arranged to discuss the situation with the plaintiffs at the regularly-scheduled selectmen's meeting of August 10. Although the selectmen sent the plaintiffs a written invitation to the meeting, the selectmen received no response and the plaintiffs did not attend.

On August 19, 1987, the Hollis selectmen again met with the town attorney. At this meeting, the Hollis selectmen stated their intent to "impose the same regulations for [the plaintiffs] as we do everyone else in town."

In April 1988, the plaintiffs filed a petition seeking damages, attorney's fees, and injunctive relief. The Superior Court (*Mohl,* J.) granted preliminary injunctive relief on May 31, 1988. In August 1990, the Superior Court (*O'Neill,* J.) allowed the plaintiffs to amend their petition. In the amended petition, the plaintiffs claimed that by posting a weight limit on Laurel Hill Road, the town, under the color of State law, had violated their rights to due process and equal protection. The plaintiffs requested damages pursuant to 42 U.S.C. §§ 1983 and 1988 (1994).

Following a five-day trial, the trial court held that State law accorded the plaintiffs the right to use Laurel Hill Road and that any

road alteration by the town would implicate the plaintiffs' State and Federal Constitutional rights to due process and equal protection. The court found that before posting the 24,000-pound weight limit, the town should have notified the plaintiffs, afforded them an opportunity to be heard, and held a public hearing on the matter. The court also found that "the Hollis Police failed to enforce [the] weight limitation [against] other vehicles using Laurel Hill Road, thereby unfairly and unlawfully singling out these plaintiffs and preventing only their vehicular use of Laurel Hill Road for loads exceeding 24,000 pounds. This was all done under color of state law." The court concluded that the town had deprived the plaintiffs of due process pursuant to 42 U.S.C. § 1983. The plaintiffs were also awarded $39,500 in attorney's fees.

On appeal, the town argues that it did not deprive the plaintiffs of due process and equal protection rights; that the decision to post a weight limit did not require a public hearing; and that the evidence and findings did not support a damage award of $262,410 or $39,500 in attorney's fees.

We will not disturb the trial court's rulings absent an abuse of discretion or a finding that the decision is unsupported by the evidence or legally erroneous. *See Hillside Assocs. of Hollis v. Maine Bonding & Cas. Co.,* 135 N.H. 325, 330, 605 A.2d 1026, 1029 (1992).

## I.  Due Process

■ The plaintiffs argue that the Hollis selectmen violated their rights to due process by not granting them a hearing before posting Laurel Hill Road. This argument is without merit. Under either part I, article 15 of the New Hampshire Constitution or the fourteenth amendment to the Federal Constitution, the notice provided by the Town of Hollis was sufficient. Both before and after the imposition of the weight limit, Hollis selectmen sought to confer personally with the plaintiffs, to no avail. Further, after the limit was enacted, the selectmen invited the plaintiffs to participate in a selectmen's meeting to discuss the matter, but the plaintiffs failed to reply and did not attend. It was after these and numerous other attempts by the town to negotiate with the plaintiffs that they chose to bring the present action. We need not decide how much notice would be due to satisfy either State or federal due process requirements for notice in this case: the selectmen's determination provided all the process that was due. *Cf. Atkins v. Parker,* 472 U.S. 115, 129–30 (1984) (welfare recipients not deprived of due process when legislature adjusts benefit levels).

Accordingly, we hold that the selectmen's action did not violate the plaintiffs' rights to due process under the State or Federal Constitutions.

## II. Equal Protection

We next turn to the question of whether the Town of Hollis violated the equal protection guarantees of part I, articles 1 and 2 of the New Hampshire Constitution and of the fourteenth amendment to the Federal Constitution. The plaintiffs base their equal protection claim on the town's alleged selective enforcement of the weight limit. This argument is without merit.

■■ The equal protection clauses of both constitutions require a State to govern impartially; generally rules must apply evenhandedly to all persons within the jurisdiction. *Jones v. Helms,* 452 U.S. 412, 423 (1981); *State v. Pennoyer,* 65 N.H. 113, 115, 18 A. 878, 880 (1889). Thus, the clauses generally forbid the legislature from imposing upon an individual burdens and liabilities that are not cast upon others similarly situated. *Jones,* 452 U.S. at 423–24; *Seabrook Police Assoc. v. Town of Seabrook,* 138 N.H. 177, 182–83, 635 A.2d 1371, 1375 (1994). The record is devoid of any evidence indicating that the weight limit was ever enforced against the plaintiffs or against anyone else. The Hollis Chief of Police testified that no tickets were ever issued to the plaintiffs. Moreover, the June 29, 1987, minutes of the Hollis selectmen meeting reflect the selectmen's unanimous decision to "have Chief of Police give tickets to *all* trucks over 24,000 pound gross weight on Laurel Hill Road." (Emphasis added.) In light of this evidence, the trial court was clearly erroneous in finding that the town had violated the plaintiffs' right to equal protection by selectively enforcing its regulation.

In accordance with our finding that the town did not violate the Federal Constitution's guarantees of due process or equal protection, we hold that the trial court erroneously awarded the plaintiffs damages and attorney's fees under sections 1983 and 1988.

## III. RSA Chapter 41

The plaintiffs also contend that the selectmen violated RSA chapter 41; they argue that this statute required the selectmen to hold a public hearing before posting the weight limit. Their argument is unpersuasive.

■ RSA chapter 41 grants the town selectmen the authority to regulate the use of public highways. RSA 41:11 (Supp. 1994). RSA chapter 43 delineates rules to be followed when the selectmen are petitioned to hold a hearing on a question affecting the rights or claims of individuals. RSA 43:1 (1991). Neither chapter requires that a hearing be held before the selectmen make a decision regarding the use of a public highway that might affect individuals' rights. We therefore find the selectmen's actions to be in conformance with RSA chapter 41.

Because we find that the town was not liable for any violations of constitutional or statutory law, we reverse the award of damages and attorney's fees to the plaintiffs.

*Reversed.*

HORTON, J., did not sit; the others concurred.