Rockingham
No. 2009-836

PETER L. GORDON, TRUSTEE OF THE PETER L. GORDON REVOCABLE
TRUST OF 1999 & a.

v.

TOWN OF RYE

Argued: September 23, 2010
Opinion Issued: June 15, 2011

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Robert E. Murphy, Jr.* on the brief and orally), for the petitioners.

*Michael L. Donovan*, of Concord, by brief and orally, for the respondent.

HICKS, J. The petitioners, owners of six properties situated on the Atlantic Ocean lying adjacent to and at the end of Harbor Road in Rye, appeal an order recommended by a Judicial Referee (*Hollman*, J.) and approved by the Superior Court (*Nicolosi*, J.) affirming a decision of the Rye Board of Selectmen (board) that a portion of the road had not become public by prescription. We affirm in part, vacate in part and remand.

The following facts are supported by the record. The section of Harbor Road at issue lies south of the jetty marking the entrance to Rye Harbor and runs approximately 350 feet around a bend and then southerly to a locked gate erected at the boundary between lot six and lot five (the McLaughlin property). This section of the road provides the only means of access to the petitioners' properties from the end of Harbor Road. The parties do not dispute that south of this gate, Harbor Road is a private road.

At a July 29, 1996 meeting of the board, petitioner Peter L. Gordon and another Harbor Road resident asked the town to plow the end of Harbor

Road. Subsequently, at its September 9 meeting, the board discussed the question and noted that a decision needed to be made whether the town would plow the road and whether it was a town road. The board discussed the issue again at its December 16 meeting and on January 13, 1997, the board informed Gordon that "he would be plowed."

On January 9, 2001, the board directed the public works director to "plow Harbor Road as far as the McLaughlin property line, as the road is a town road down to that point." The town continued to plow the disputed section of the road until the McLaughlins erected a gate across the private right-of-way continuing off the end of Harbor Road, making it difficult for the town to turn its snow removal equipment around. At its November 10, 2005 meeting, the board noted that

> [w]ith winter approaching, the question of whether or not the gate at the entrance to the McLaughlin property at the end of Harbor Road is still in place must be resolved prior to the first plowing. If the gate is down, our plows cannot turn around or clear the snow in front of the gate.

At its December 12 meeting, the selectmen noted that "[a]uthorization has been received from [the] property owners beyond the McLaughlin gate at the terminus of Harbor Road for the Town to access their R.O.W.'s in order to plow and turn around."

On December 28, 2006, the board conducted a site visit to "review[] the situation at the end of Harbor Road adjacent to the McLaughlin property." McLaughlin had notified the town that its plow trucks would not be able to use his property or the right-of-way through his property to turn around when plowing the town portion of Harbor Road, which meant that the town would not be able to plow approximately the last one hundred feet of Harbor Road.

On November 27, 2007, the town administrator notified the affected Harbor Road property owners by letter that "State law does not allow a town to lawfully spend public money to maintain a private road unless the maintenance is 'subordinate and incidental' to the needs of the Town's own highways and the benefited persons fully compensate the Town." In his letter, the administrator stated that the board would defer deciding on the public or private status of the disputed section of Harbor Road because some of the affected property owners were away for the winter months. The letter stated that the town would continue plowing the disputed section of road during the 2007-2008 winter but that this action "should not be construed by any property owner as a representation by the [town] that the section of Harbor Road beyond the jetty is a town road."

On September 19, 2008, the board issued a notice of hearing stating:

[O]n October 20, 2008 at 6:30 p.m. at the Rye Town Hall, the Town of Rye Board of Selectmen will hold a hearing on whether the section of Harbor Road between the Rye Harbor south jetty and the lot owned by Family Harbor Realty Trust (i.e. the "McLaughlin's Lot") is a town road or a private right-of-way.

After the hearing, the Board of Selectmen is expected to make a decision concerning the legal status of this section of Harbor Road. If the Board of Selectmen determines that this section of road is a private right-of[-]way, the Town will discontinue maintenance of it.

As a property owner whose lot is accessed by this section of Harbor Road, your property rights may be affected by the decision which the Board of Selectmen makes. You may attend the hearing and provide the Board of Selectmen with testimony and evidence relative to the legal status of this section of Harbor Road.

Please be advised that Town Counsel has reviewed the legal status of this section of Harbor Road and opined that it is a private right-of-way and not a town road. A copy of Town Counsel's opinion and his analysis . . . is appended to this notice. A notebook containing the deeds and plans of record and other information reviewed by Town Counsel is available for inspection and copying at the Selectmen's Office, Rye Town Hall.

After summarizing the purpose of the hearing, the chairman of the board opened the October hearing by stating that the hearing would be held under the provisions of RSA chapter 43. At the hearing, the board considered maps and aerial photographs, property deeds and written and oral testimony.

On November 17, 2008, the board decided that "due to the lack of convincing evidence showing this to be a public road, and because the deeds clearly state that the road is to be maintained by the property owners, that [the disputed section of Harbor Road] is and has always been a private road." On December 1, 2008, the board issued its written decision. The petitioners filed a motion for rehearing, arguing that the board's decision was unlawful because the board "lacked subject matter jurisdiction to rule on the issue whether Rye Harbor Road south of the jetty to the McLaughlin property was a public road under chapter 43." The petitioners also argued that "[t]here was no petition to layout or alter a highway before the Board" and "[t]he sole jurisdiction to discontinue maintenance of a road is RSA 231:45-a, I. If the road was public in 1997, the only way it may be

discontinued is by legislative action at Town meeting." Denying the motion for rehearing, the board stated that the jurisdiction argument "could have been raised in 2007 when the selectmen first notified the property owners that it would hold a hearing to determine the status of this section of Harbor Road" and that RSA 231:45-a, I, does not apply because "[i]n order for a town meeting to vote to discontinue a town road, the town road must lawfully exist as a town road. This proceeding was intended to determine whether or not the section of Harbor Rd. south of the jetty was or was not a lawfully established town road."

The petitioners filed a petition for a writ of certiorari, mandamus and declaratory relief in the superior court, seeking a review of the board's decision and a declaration that the disputed section of Harbor Road is a public road. At the merits hearing, the petitioners argued that RSA chapter 43 does not provide the board with subject matter jurisdiction to decide whether a road is public or private. The town argued that the board's jurisdiction over roads is conferred by RSA 41:11, which, it argued, gives the board "total authority to regulate roads without any action by the town meeting."

The trial court's order notes that the petitioners and the board agreed that the standard to be applied by the board would be whether the disputed portion of Harbor Road became a public road by prescription. The trial court reviewed the board's decision on this issue and found it to be lawful. Regarding the board's 1997 decision to resume plowing the disputed section of Harbor Road, the court ruled that it did not qualify as a final decision subjecting the proceedings to the doctrine of res judicata. Regarding the board's subject matter jurisdiction, the court ruled that

> RSA Chapter 43 is not merely limited to petitions to layout or alter a highway, but also applies to a petition for "the purpose of deciding any question affecting the conflicting rights or claims of different persons." Because the Board analyzed whether the Disputed Road Section is a public road, which is a question affecting the conflicting rights and claims of both the Town and the petitioners, the Board properly exercised subject matter jurisdiction pursuant to RSA 43:1.

(Citation omitted.)

The petitioners appealed, arguing that the trial court erred in ruling: (1) that the board's 1997 decision that the road was a public road was not a decision entitled to preclusive effect; (2) that the board's 1997 decision was limited to snowplowing; and (3) that the board correctly decided that petitioners did not establish a public road by prescription. Following oral argument, we ordered the parties to submit supplemental briefs address-

ing whether the board had jurisdiction to decide whether the section of Harbor Road at issue became public by prescription. The petitioners argue that RSA chapter 43 does not confer upon the board subject matter jurisdiction to change a roadway's status other than by a petition for layout. The town argues that, pursuant to RSA 41:8, the board "has the prudential responsibility for managing town affairs and for performing the duties prescribed by law" and, accordingly, "[i]f a dispute arises in a town as to whether a particular street is a public or private street, then it falls to the board of selectmen to make that determination."

We disagree with the petitioners that the board's decision in 1997 to resume plowing the disputed section of Harbor Road is entitled to preclusive effect, thereby preventing the board from "reopening the status of the Disputed Road Section" in 2008. Despite the petitioners' characterization of the board's 1997 decision as determining that the disputed section is a town road, a review of the record supports the trial court's finding that the board "did not determine that the road was a public road" but "merely responded to a plowing request made by petitioner Gordon at its 1997 meeting." *See 74 Cox St. v. City of Nashua*, 156 N.H. 228, 230 (2007) (we will uphold the trial court's decision on a certiorari petition unless it is not supported by the evidence or is erroneous as a matter of law).

■■ We agree, however, that the board lacked subject matter jurisdiction to determine whether the disputed section of Harbor Road became public by prescription.

> Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things. In other words, it is a tribunal's authority to adjudicate the type of controversy involved in the action. A court lacks power to hear or determine a case concerning subject matters over which it has no jurisdiction. A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive subject matter jurisdiction.

*In the Matter of Gray & Gray*, 160 N.H. 62, 65 (2010) (quotations, citations and brackets omitted); *see State v. Demesmin*, 159 N.H. 595, 597 (2010) (subject matter jurisdiction may be raised on appeal by the court *sua sponte*). Jurisdiction over the subject matter of a controversy cannot be acquired by agreement of the parties. *Burleigh v. Leon*, 83 N.H. 115, 117 (1927). Absent subject matter jurisdiction, a tribunal's order is void. *See Hemenway v. Hemenway*, 159 N.H. 680, 684 (2010). Because subject

matter jurisdiction may be raised at any time, we reject the town's argument that the petitioners waived this issue. *See Demesmin*, 159 N.H. at 597.

Whether the board had subject matter jurisdiction to determine whether the disputed section of Harbor Road became public by prescription requires statutory interpretation, which is a question of law that we review *de novo. See Appeal of Thermo-Fisher Scientific*, 160 N.H. 670, 672 (2010). "We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." *Petition of Farmington Teachers Assoc.*, 158 N.H. 453, 456 (2009) (quotations and citations omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. We interpret a statute in the context of the overall statutory scheme and not in isolation." *Id.* (quotation omitted).

██ ██ A board of selectmen has the responsibility to "manage the prudential affairs of the town and perform the duties by law prescribed." RSA 41:8 (2003).

> In determining the meaning of the ancient statutory phrase, — "to manage all the prudential affairs of the town," — it is worthy of note that the nearer we get to the time of the framers of the early statutes, the more restricted is the view that we find taken of the powers of selectmen.

*Rich v. Errol*, 51 N.H. 350, 355 (1871). Selectmen "can only exercise such powers and perform such duties as are properly incident to the special and limited authority conferred on them by their office." *Id.* at 354 (quotation omitted).

██ RSA 41:11 (2003) provides that "the selectmen may regulate the use of all public highways, sidewalks, and commons in their respective towns and for this purpose may exercise all the powers conferred on city councils by RSA 47:17, VII, VIII, and XVIII, and by any other provisions of the laws upon the subject." RSA 47:17, VII (Supp. 2010) grants the selectmen the authority "[t]o regulate all streets and public ways, wharves, docks, and squares." However, "[t]his statute . . . does not provide towns with the authority to determine the relative rights of property owners." *Gray v. Seidel*, 143 N.H. 327, 330 (1999). RSA 47:17, VIII (Supp. 2010) governs traffic devices and signals and RSA 47:17, XVIII (Supp. 2010) governs automobile parking controls; thus, neither of these provisions is applicable to the issue before us.

■ In addition, pursuant to "other provisions of the laws upon the subject," RSA 41:11, selectmen have the duty to lay out all class IV highways not financed with federal aid highway funds, and class V and VI highways. RSA 231:1 (2009). Upon petition, the selectmen "may lay out any new class IV highway not financed . . . with federal aid highway funds, and class V or VI highway or alter any such existing highway within their town for which there shall be occasion." RSA 231:8 (2009). Unless the selectmen are of the opinion that the petition ought not be granted, they must give notice and hold a public hearing on the petitioned highway layout. RSA 231:9 (2009). Upon petition, the selectmen must, in the absence of written objection, lay out a highway, subject to gates and bars, in the location in which it previously existed if the petitioner has no other access to his land by public highway. RSA 231:22 (2009). The selectmen also have authority to make a conditional layout, RSA 231:23 (2009), lay out a road exclusively for winter use, RSA 231:24 (2009), "reestablish the boundary lines, limits and locations of any class IV, V or VI highway," RSA 231:27 (2009), or make a conditional layout for existing private rights-of-way, RSA 231:28 (2009).

None of these statutory provisions authorizes a board of selectmen to determine whether a road has become public by prescription. *See* RSA 229:1 (2009) (defining highways); *Polizzo v. Town of Hampton*, 126 N.H. 398, 401 (1985) (noting that a public highway may be created through taking of land by eminent domain and laying out of a highway by some governmental authority, through the construction of a road on public land, through twenty years of use by the public, or by dedication and acceptance). The trial court found that the board had such subject matter jurisdiction pursuant to RSA 43:1. We disagree.

■ "RSA chapter 43 delineates rules to be followed when the selectmen are petitioned to hold a hearing on a question affecting the rights or claims of individuals." *Kerouac v. Town of Hollis*, 139 N.H. 554, 562 (1995). For example, when the board holds a hearing for laying out a highway, it must follow the procedures in RSA chapter 43. *See* RSA 43:1. Or, when the board conducts a hearing for the removal of a town clerk, as authorized by RSA 41:16-c (Supp. 2010), the hearing must be conducted in accordance with RSA chapter 43. RSA 41:16-c, IV(a). RSA chapter 43 does not, however, establish jurisdiction in the board over a matter it is not otherwise statutorily authorized to hear. Whatever jurisdiction the board may possess pertaining to a "question affecting the conflicting rights or claims of different persons," RSA 43:1, must be derived from the legislature as set forth by statute. *Cf. In re Estate of O'Dwyer*, 135 N.H. 323, 324-25 (1992) (probate court not a court of general jurisdiction; rather, its "powers are limited to those conferred upon it by statute"), *superseded by statute on*

*other grounds, as stated by In re Estate of Porter,* 159 N.H. 212, 214-15 (2009). We note that the town does not argue that RSA chapter 43 established subject matter jurisdiction in the board over this issue. Rather, the town argues that "[t]he selectmen found their authority to determine the town's maintenance responsibility elsewhere" and "used Chapter 43 only to guide its procedures."

"[A]s a general rule, since actions involving a claim to an easement by prescription require a determination of ownership and possessory rights to realty, the state court with jurisdiction to determine title to the property where the claimed easement is located will be the appropriate forum." Larsson, *Causes of Action to Establish Private Easement by Prescription,* 42 COA2d 111, 217 (2009). In this state, "[t]he legislature has specifically provided that declaratory judgment actions can be brought in superior court by parties faced with adverse claims to an interest in real property." *Radkay v. Confalone,* 133 N.H. 294, 297 (1990); *see* RSA 491:22, I (2010) ("any person claiming a present legal or equitable right or title may maintain a petition [in the superior court] against any person claiming adversely to such right or title to determine the question as between the parties").

We conclude that the board lacked subject matter jurisdiction to determine whether the disputed section of Harbor Road became public by prescription. Accordingly, we vacate that portion of the trial court's order and remand the case to the trial court for it to decide this issue *de novo. See Gray,* 143 N.H. at 330 (declaratory judgment action in superior court appropriate to determine relative property rights of owners when no other provision for determining such rights has been created by statute).

> *Affirmed in part; vacated in part; and remanded.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.